# 23-1041-cv

## United States Court of Appeals
### *for the*
## Second Circuit

———————♦———————

RHULAND DAVIS

*Plaintiff-Appellant,*

– v. –

METRO NORTH COMMUTER RAILROAD, ANDREW
PAUL, Vice President Labor Relations, in his official and
personal capacity, JOHN LONGOBARDI, Deputy Chief Field
Operations, in his official and personal capacity,

*Defendants-Appellees.*

———————————————

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

## BRIEF FOR DEFENDANTS-APPELLEES

METRO-NORTH COMMUTER RAILROAD
SUSAN SARCH
VICE-PRESIDENT AND GENERAL COUNSEL
BY: JENNIFER A. MUSTES
   Metro-North Commuter Railroad Company
   420 Lexington Avenue, 11th Floor Legal Dept.
   New York, New York 10170
   (212) 340-2504

*Attorneys for Defendants-Appellees*

## **TABLE OF CONTENTS**

**Page**

TABLE OF AUTHORITIES .................................................................iii

ISSUES PRESENTED .......................................................................1

STATEMENT OF THE CASE ...........................................................2

    A.    Davis' Employment by Metro-North ......................................2

    B.    Davis' Discipline for the Events of June 20, 2016 ................2

    C.    Davis' Discipline for the Events of July 12, 2018 ................4

    D.    A Neutral Arbitrator Upheld Davis' Discipline for the Events of June 20, 2016 and July 12, 2018 ...............................6

    E.    The District Court Dismissed Davis' Second Amended Complaint With Prejudice ......................................................7

STANDARD OF REVIEW ...............................................................9

ARGUMENT SUMMARY ..............................................................10

ARGUMENT .....................................................................................11

    POINT I

    THE DISTRICT COURT PROPERLY DECLINED TO CONVERT DEFENDANTS-APPELLEES' DISMISSAL MOTION INTO ONE FOR SUMMARY JUDGMENT AND HOLD IT IN ABEYANCE ........11

    POINT II

    THE DISTRICT COURT CORRECTLY DISMISSED DAVIS' PROCEDURAL DUE PROCESS CLAIM BECAUSE DAVIS RECEIVED HIS CONSTITUTIONAL PROTECTIONS ........13

POINT III

BECAUSE DAVIS FAILED TO ALLEGE APPROPRIATE
COMPARATORS OR MALICE, THE DISMISSAL WITH
PREJUDICE OF HIS SELECTIVE ENFORCEMENT CLAIM
SHOULD BE AFFIRMED ................................................................18

    A.    Davis Failed to Allege That Similarly Situated Employees
           Received Cognizably Favorable Treatment .............................19

    B.    Davis Failed to Allege That Malice Towards Him
           Caused His Termination ...........................................................25

POINT IV

THE DISTRICT COURT CORRECTLY DISMISSED DAVIS'
TITLE VII CLAIM FOR FAILING TO RAISE AN INFERENCE OF
RACIAL DISCRIMINATION ........................................................27

    A.    Alleged Procedural Irregularities in Davis' Disciplinary
           Process Do Not Raise an Inference of Racial Discrimination ...28

    B.    Davis' Purportedly Disproportionate Punishment Does Not
           Raise an Inference of Racial Discrimination .........................32

CONCLUSION ................................................................................34

CERTIFICATE OF COMPLIANCE ...............................................36

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Almodovar v. Cross Fin. Corp.*,
    No. 20 Civ. 1179, 2022 U.S. Dist. LEXIS 98413
    (D. Conn. June 2, 2022) ........................................................... 30

*Anderson v. New York City Health & Hosps. Corp.*,
    No. 16 Civ. 1051, 2020 U.S. Dist. LEXIS 36772,
    *report and recommendation adopted*, 2020 U.S. Dist. LEXIS 56234
    (S.D.N.Y. Mar. 31, 2020) ........................................................ 29

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) .................................................................. 9

*Bacon v. Phelps*,
    961 F.3d 533 (2d Cir. 2020) ...................................................... 9

*Bickerstaff v. Vassar Coll.*,
    196 F.3d 435 (2d Cir. 1999) .................................................... 30

*Bizzarro v. Miranda*,
    394 F.3d 82 (2d Cir. 2005) ...................................................... 25

*Brown v. City of Syracuse*,
    673 F.3d 141 (2d Cir. 2012) .................................................... 22

*Chambers v. Time Warner, Inc.*,
    282 F.3d 147 (2d Cir. 2002) .................................................... 12

*Cine Sk8, Inc. v. Town of Henrietta*,
    507 F.3d 778 (2d Cir. 2007) .................................................... 19

*Cleveland Bd. of Educ. v. Loudermill*,
    470 U.S. 532 (1985) ................................................. 8, 13, 14, 15

*Cooper v. Franklin Templeton Invs.*,
    22-2763-cv, 2023 U.S. App. LEXIS 14244 (2d Cir. June 8, 2023) ........ 24, 25

*Davidson v. Tesla*,
　No. 06 Civ. 861, 2008 U.S. Dist. LEXIS 10529
　(D. Conn. Feb. 13, 2008) ...................................................... 22

*Denny v. Barber*,
　576 F.2d 465 (2d Cir. 1978) ................................................. 18

*DiBlasio v. Novell*,
　344 F.3d 292 (2d Cir. 2003) ................................................ 16

*DiCesare v. Town of Stonington*,
　823 F. App'x 19 (2d Cir. 2020) ........................................... 16

*Donnelly v. Greenburgh Cent. Sch. Dist. No. 7*,
　No. 08 Civ. 11031, 2011 U.S. Dist. LEXIS 172790
　(S.D.N.Y. Mar. 31, 2011) .................................................... 31

*Dubois v. Beaury*,
　21-2096-cv, 2022 U.S. App. LEXIS 14647 (2d Cir. May 27, 2022) ......... 18, 21

*Eldaghar v. City of N.Y. Dep't of Citywide Admin. Servs.*,
　No. 02 Civ. 9151, 2008 U.S. Dist. LEXIS 58040
　(S.D.N.Y. July 31, 2008) .................................................... 30

*Faghri v. Univ. of Conn.*,
　621 F.3d 92 (2d Cir. 2010) .................................................. 14

*Giraud v. MTA Metro-North R.R. Co.*,
　No. 09 Civ. 2187, 2010 U.S. Dist. LEXIS 23197
　(S.D.N.Y. Mar. 12, 2010) .................................................... 17

*Global Network Communs., Inc. v. City of New York*,
　458 F.3d 150 (2d Cir. 2006) ................................................ 12

*Graham v. Long Island R.R.*,
　230 F.3d 34 (2d Cir. 2000) .................................................. 19

*Green v. Dep't of Educ. of City of New York*,
　16 F.4th 1070 (2d Cir. 2021) ............................................. 14, 15

*Gullo v. Califano*,
　609 F.2d 649 (2d Cir. 1979) ................................................ 14

iv

*I. Meyer Pincus & Assocs., P.C. v. Oppenheimer & Co.*,
   936 F.2d 759 (2d Cir. 1991) .......................................................... 9

*Harhay v. Town of Ellington Bd. of Educ.*,
   323 F.3d 206 (2d Cir. 2003) .......................................................... 16

*Hu v. City of New York*,
   927 F.3d 81 (2d Cir. 2019) .......................................................... 21

*Johnson v. Conn.*,
   798 F. Supp. 2d 379 (D. Conn. 2011) .......................................... 29

*Karmilowicz v. Hartford Fin. Servs. Grp.*,
   494 F. App'x 153 (2d Cir. 2012) .................................................. 9

*Locurto v. Safir*,
   264 F.3d 154 (2d Cir. 2001) ................................................... 15, 16

*Mosdos Chofetz Chaim, Inc. v. Vill. of Wesley Hills*,
   815 F. Supp. 2d 679 (S.D.N.Y. 2011) ..................................... 19, 24

*Norris v. Metro-North Commuter R.R. Co.*,
   522 F. Supp. 2d 402 (D. Conn. 2007) .......................................... 30

*Richards v. Calvet*,
   No. 99 Civ. 12172, 2005 U.S. Dist. LEXIS 5365
   (S.D.N.Y. Mar. 31, 2005) ............................................................. 29

*Rothenberg v. Daus*,
   481 F. App'x 667 (2d Cir. 2012) ............................................. 15, 16

*Rothman v. Gregor*,
   220 F.3d 81 (2d Cir. 2000) ............................................................ 9

*Shaw v. McDonald*,
   715 F. App'x 60 (2d Cir. 2018) .................................................... 24

*Sklaver v. Casso-Solar Corp.*,
   No. 02 Civ. 9928, 2004 U.S. Dist. LEXIS 24934
   (S.D.N.Y. May 14, 2004) .............................................................. 30

*Smart v. Gifford*,
  No. 15 Civ. 8939, 2018 U.S. Dist. LEXIS 5998
  (S.D.N.Y. Jan. 12, 2018) ................................................................ 18

*Smith v. North Shore-Long Island Jewish Health Sys.*,
  286 F. Supp. 3d 501 (E.D.N.Y. 2018) ............................................ 33

*Stalter v. Walmart Stores*,
  195 F.3d 285 (7th Cir. 1999) ........................................................ 33

*State St. Bank & Trust Co. v. Inversiones Errazuriz Limitada*,
  374 F.3d 158 (2d Cir. 2004) .......................................................... 28

*Stern v. Trustees of Columbia Univ.*,
  131 F.3d 305 (2d Cir. 1997) .......................................................... 30

*Sveaas v. Christie's Inc.*,
  452 F. App'x 63 (2d Cir. 2011) ...................................................... 21

*Tate v. Navient Sols., LLC (In re Navient Sols., LLC)*,
  No. 22-1376, 2023 U.S. App. LEXIS 12067 (2d Cir. May 17, 2023) ......... 9

*Testagrose v. N.Y. City Hous. Auth.*,
  No. 06 Civ. 0614, 2009 U.S. Dist. LEXIS 30326
  (E.D.N.Y. Mar. 31, 2009), *aff'd*, 369 F. App'x 231 (2d Cir. 2010) ......... 22

*Townley v. Heckler*,
  748 F.2d 109 (2d Cir. 1984) .......................................................... 14

*Williams v. Metro-North R.R.*,
  No. 17 Civ. 3092, 2020 U.S. Dist. LEXIS 53914
  (S.D.N.Y. Mar. 27, 2020) .............................................................. 17

*Victory v. Pataki*,
  814 F.3d 47 (2d Cir. 2016) ............................................................ 16

*Zahorik v. Cornell Univ.*,
  729 F.2d 85 (2d Cir. 1984) ............................................................ 31

*Zheng-Smith v. Nassau Health Care Corp.*,
  20-3544-cv, 2021 U.S. App. LEXIS 27084 (2d Cir. Sept. 9, 2021) ......... 23

**Constitution and Statutes**

Fourteenth Amendment to the United States Constitution .............. 13, 18

45 U.S.C. §§ 151, *et seq.* ................................................................ 2

42 U.S.C. § 1983 ................................................................... *passim*

42 U.S.C. §§2000e to 2000e-17 ........................................... *passim*

**Rules**

Fed. R. Civ. Proc. 12(b)(6) ................................................... *passim*

Fed. R. Civ. Proc. 12(d) ............................................................ 12

Fed. R. Civ. Proc. 15(a)(2) ........................................................ 12

## **ISSUES PRESENTED**

1.     Whether the district court appropriately declined to convert Defendants-Appellees' Rule 12(b)(6) motion into one for summary judgment pursuant to Rule 12(d) and hold the motion in abeyance pending the completion of discovery due to Appellant Rhuland Davis' ("Davis") voluntary submission of discovery material integral to his pleading in opposition to the dismissal motion?

2.     Whether the district court properly dismissed with prejudice Davis' Section 1983 due process claim under Rule 12(b)(6) where Davis concededly received the procedural protections guaranteed to him by the Constitution in connection with his termination, including written notice of his disciplinary charges, a formal investigation and hearing at which he testified, and appeal to a neutral arbitrator pursuant to a collective bargaining agreement?

3.     Whether the district court properly dismissed with prejudice Davis' Section 1983 selective enforcement claim under Rule 12(b)(6) in light of Davis' failure to allege proper comparators or malicious intent?

4.     Whether the district court properly dismissed with prejudice Davis' Title VII claim under Rule 12(b)(6) given Davis' failure to raise an inference of racial discrimination?

## **STATEMENT OF THE CASE**

This appeal concerns the district court's (Ramos, U.S.D.J.) dismissal of Plaintiff-Appellee Rhuland Davis' ("Davis") procedural due process, selective enforcement, and racial discrimination claims concerning the termination of his employment by Metro-North Commuter Railroad ("Metro-North") with prejudice pursuant to Federal Rule of Civil Procedure 12(b)(6).  A101-27.

### **A. Davis' Employment by Metro-North**

Davis, who identifies as Black, was employed by Metro-North beginning in September 1991, and became a Metro-North Conductor in June 1996.  A013 ¶¶ 8-10.  Each Metro-North train must be staffed with at least one Conductor, who is the crewmember in charge of the train crew, including of the Engineers who operate the equipment. Conductors are the employees ultimately responsible for the safe operation of each train.  As a Conductor, Davis's hours of service, working conditions, and rates of pay were governed by a Collective Bargaining Agreement ("CBA") between Metro-North and his union, the Association of Commuter Rail Employees, Local 1 ("ACRE").  *Id.* ¶ 11.  The CBA was negotiated and settled under the Railway Labor Act, 45 U.S.C. §§ 151, *et seq.*

### **B. Davis' Discipline for the Events of June 20, 2016**

On June 20, 2016, Davis was working in a role known as a Conductor Flag, in which he was assigned to protect contractors working on or around Metro-North

tracks, including warning them of approaching equipment. A011 ¶ 2. Davis was issued disciplinary charges for violating several Metro-North rules during that assignment. *Id.* Specifically, on June 24, 2016 he was charged with failing to deliver a mandatory safety briefing to the contractors and leaving his assignment without notification to or permission of his supervisors before the contractors had completed their work on June 20, 2016. He also was charged with failing to accurately record his time worked that day, resulting in the receipt of wages for time not worked – effectively stealing time. *Id.*; A032-33.

Pursuant to the CBA, a disciplinary hearing was held on these charges in November 2016 and Davis was found guilty. A011-12 ¶ 2. Initially Davis' employment was terminated, but Metro-North later granted him leniency and converted his termination to a sixty-one-day suspension. *Id.* Metro-North typically considers suspensions in excess of 60 days to be "last chance" discipline, such that any subsequent discipline results in termination. *Id.* Davis filed a complaint with the New York State Division of Human Rights ("NYSDHR") alleging that his discipline for the events of June 20, 2016 was the result of race discrimination, but following an investigation the NYSDHR found no probable cause to believe that Davis had been subjected to race discrimination. A012 ¶ 5.

**C.    Davis' Discipline for the Events of July 12, 2018**

On July 12, 2018, the train on which Davis was working as a Conductor collided with another train.  A014 ¶ 13, A015 ¶ 18.  On July 19, 2018, Davis was issued disciplinary charges for violating several rules and regulations of Metro-North and the Federal Railroad Administration in connection with the July 12 incident, including failing to prevent the Engineer from operating at an excessive speed, failing to report the collision, participating in an unauthorized reverse move of the train, and failing to carry his Conductor certificate.  A015 ¶ 21, A042. Consistent with the CBA, the hearing on Davis' charges was scheduled to begin in seven days.  A042, A053-54.  However, the CBA provides that the actual hearing commencement is subject to postponement based on, *inter alia*, the availability of participants.  A053-54.

The CBA states that prior to a disciplinary hearing, ACRE "and Metro-North representatives will meet for the purpose of attempting to resolve the matter.  If the parties are unsuccessful at resolving the matter, the trial will proceed."  A053.  In early August, Davis' union representatives met with Metro-North to discuss the disciplinary charges that had been issued to Davis and the Engineer involved in the July 12 incident.  A020 ¶ 39, A060 (August 7, 2018 text message from Davis' union representative to Davis stating "we met with the Vice President last week" concerning Davis' disciplinary charges); *see also* A089 (describing presentation of

4

video of July 12, 2018 incident to union representatives). On August 7, 2018, Davis'
union representative advised him that if a resolution to his charges could not be
negotiated with Metro-North during the next two weeks, a disciplinary hearing
would be scheduled after the union representative returned from vacation during the
week of August 20. A061.

Pursuant to the CBA, a hearing was held on Davis' disciplinary charges
beginning on September 5, 2018. A016 ¶ 22. Davis heard testimony by Metro-
North witnesses and testified on his own behalf. *See id.* ¶¶ 22-23. On September
26, 2018, Davis' union representative conveyed to him that Metro-North would
allow him to return to work the next day if he signed a waiver agreement, akin to a
plea bargain, in which he admitted guilt to his disciplinary charges, waived further
appeals under the CBA, and agreed to accept a suspension consisting of the time he
had been held out of service since July 12. A021 ¶ 46, A063, ECF No. 31-6
("Plaintiff learned that Chief Transportation Officer, Kevin O'Connor,
communicated to plaintiff's union representatives that Metro North was going to
terminate him unless he signed an admission of guilt waiver and forfeited his right
to appeal."). The union representative asked Davis to "let me know what you want
to do. We support any decision you make." A063. Davis refused Metro-North's
offer. A021 ¶ 46; ECF No. 31-6 (Davis "declined to sign an admission of guilt, as
he was entitled to, because he maintained that he was not responsible for the train

collision.").   Defendant-Appellee John Longobardi, Metro-North's then-Deputy Chief Field Operations in the Transportation Department, concluded that Davis was guilty of his disciplinary charges and terminated Davis' employment with Metro-North effective October 9, 2018.  A012 ¶ 3, A017 ¶ 25.

Davis filed a complaint with the NYSDHR alleging that his termination for the events of July 12, 2018 constituted race discrimination and retaliation.  *See* A012 ¶ 5.  Following an investigation, the NYSDHR determined that there was no probable cause to believe that Davis' termination was the result of race discrimination or retaliation.  *Id.*

**D.     A Neutral Arbitrator Upheld Davis' Discipline for the Events of June 20, 2016 and July 12, 2018**

Pursuant to the CBA, Davis' discipline for the events of June 20, 2016 and July 12, 2018 was appealed to the National Mediation Board's Special Board of Adjustment No. 1182.  A012 ¶ 4.  In a November 18, 2019 Award, a neutral arbitrator determined that Davis' June 2016 misconduct in connection with his Conductor Flag assignment "would support job termination."  A013 ¶ 7; *see also* A075-76.  However, because Metro-North already had exercised leniency and reduced Davis' penalty to a 61-day suspension, the arbitrator accepted that penalty. A076.

The neutral arbitrator likewise upheld Davis' termination for the events of July 2018.  A013 ¶ 7.  In a December 10, 2019 Award, the arbitrator noted that after

Davis was reinstated on a "last chance" basis following the June 2016 incident, he "was under the duty to rigorously and precisely carry out all [Metro-North] rules and requirements, be they minor or major." A079-80; *see also* A013 ¶ 7. Because the arbitrator found that Davis unquestionably did not comply with Metro-North procedures after the July 2018 collision – including by failing to report the incident or obtain permission to perform a reverse move of the train – the arbitrator concluded that Davis was properly discharged from service. *Id*. Indeed, the arbitrator noted that even Davis' failure to carry a required certificate while working as a Conductor justified Davis' termination in light of his prior "last chance" discipline. *Id.*

## E. The District Court Dismissed Davis' Second Amended Complaint With Prejudice

Davis' Second Amended Complaint, filed by his counsel, brought claims challenging Davis' termination under Section 1983 for alleged due process and selective enforcement violations by all Defendants-Appellees and under Title VII for alleged race discrimination by Metro-North. A011-27. Defendants-Appellees moved to dismiss all claims with prejudice. *See* A102.

At the outset, the district court rejected Davis' request to convert the dismissal motion to one for summary judgment and hold it in abeyance pending the completion of discovery. A111-13. The district court concluded that the discovery material Davis voluntarily submitted in opposition to Defendants-Appellees' motion was in

fact properly considered on the motion because it was incorporated by reference or otherwise integral to Davis' pleading. *Id.*

With respect to Davis' procedural due process claim, the district court held that Davis received the procedural protections guaranteed to him under the Constitution, as set forth in *Cleveland Board of Education v. Loudermill*, 470 U.S. 532, 545-46 (1985), including adequate notice of his disciplinary charges. A123-24. Although Davis complained about the absence of a pre-hearing meeting with Metro-North, the district court determined such meeting was not constitutionally required, and thus Davis' allegations could not support a Section 1983 claim. A124. Davis also alleged that the outcome of his hearing was predetermined, but the district court noted that a neutral decisionmaker is not required for such a proceeding. A125. Finally, Davis challenged the competency of the neutral arbitrator who upheld his termination based on the arbitrator's age, but the district court rejected Davis' allegations as conclusory, and contrary to his and his union's consent to proceed before the arbitrator. A125.

The district court also dismissed Davis' Section 1983 selective enforcement and Title VII claims with prejudice based on Davis' failure to identify similarly situated employees who received favorable treatment. A113-17, A121-22. With respect to Davis' Title VII claim, the district court also determined that Davis did not raise an inference of racial discrimination based on alleged procedural

irregularities in his disciplinary process and the purported disproportionality of his discipline.  A117-19.

## <u>STANDARD OF REVIEW</u>

This Court reviews the dismissal of a claim under Rule 12(b)(6) *de novo*. *Bacon v. Phelps*, 961 F.3d 533, 540 (2d Cir. 2020).  To survive a 12(b)(6) motion, a claim "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted).

In evaluating a Rule 12(b)(6) motion, a court "may consider the facts alleged in the complaint, together with 'any statements or documents incorporated in it by reference, as well as . . . documents that the plaintiffs either possessed or knew about and upon which they relied in bringing the suit.'"  *Karmilowicz v. Hartford Fin. Servs. Grp.*, 494 F. App'x 153, 156 (2d Cir. 2012) (summary order) (quoting *Rothman v. Gregor*, 220 F.3d 81, 88 (2d Cir. 2000)).  Allegations that are contradicted by a document attached to, referenced in, or integral to a complaint need not be credited.  *See I. Meyer Pincus & Assocs., P.C. v. Oppenheimer & Co.*, 936 F.2d 759, 762 (2d Cir. 1991); *Tate v. Navient Sols., LLC (In re Navient Sols., LLC)*, No. 22-1376, 2023 U.S. App. LEXIS 12067, at *7 (2d Cir. May 17, 2023) (summary order).

## ARGUMENT SUMMARY

Less than two years after Davis had been assessed last-chance discipline, he was the Conductor in charge of a train that collided with other equipment, but he failed to report the collision and instead participated in an unauthorized reverse move of his train, while he was not carrying his required certification card. After issuing Davis written disciplinary charges and meeting with his union to discuss them, Metro-North held an internal disciplinary hearing at which Davis testified.

Although Metro-North initially considered Davis and at least the Engineer involved in the July 12, 2018 incident to have committed terminable offenses, following Davis' hearing Metro-North offered him the opportunity to resolve his disciplinary charges by accepting a suspension, admitting guilt, and waiving further appeals. Davis rejected this offer based on his belief in his complete innocence. Based on the evidence adduced at the hearing, Davis was found guilty of his charges and terminated. By contrast, the Engineer accepted Metro-North's settlement offer and remined employed, as have other employees who accepted disciplinary waiver agreements. Davis exercised his right under the CBA to appeal his termination to a neutral arbitrator, who upheld his termination. Davis likewise challenged his termination as a product of racial discrimination in a complaint to the NYSHDR, which found no probable cause to support it.

Davis concededly received the procedural due process protections guaranteed to him by the Constitution, and thus the dismissal of his Section 1983 procedural due process claim should be affirmed. Likewise, Davis has not alleged favorable treatment of similarly situated comparators or malice towards him, rendering his Section 1983 selective enforcement claim deficient. Finally, Davis has failed to raise an inference of race discrimination in connection with his termination, which was in fact the result of Davis' conduct during the July 12, 2018 incident and his disciplinary history, and thus the dismissal of his Title VII race discrimination claim against Metro-North also should be affirmed.

## **ARGUMENT**

### **POINT I**
### **THE DISTRICT COURT PROPERLY DECLINED TO CONVERT DEFENDANTS-APPELLEES' DISMISSAL MOTION TO ONE FOR SUMMARY JUDGMENT AND HOLD IT IN ABEYANCE**

The district court appropriately declined Davis' request to convert Defendants-Appellees' dismissal motion to one for summary judgment and hold it in abeyance pending further discovery based on Davis' voluntary submission of seven documents produced in discovery with his opposition. As this Court has explained, "the harm to the plaintiff when a court considers material extraneous to a complaint is the lack of notice that the material may be considered." But "where plaintiff has actual notice of all the information in the movant's papers and has relied upon these documents in framing the complaint the necessity of translating a Rule

12(b)(6) motion into one under Rule 56 is largely dissipated." *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002). The district court properly concluded that the seven documents proffered by Davis merely supported Davis' allegations in his pleading, and thus could be considered under Rule 12(b)(6). A11-13. On appeal, Davis does not even attempt to refute the district court's analysis that these seven documents were referenced in or integral to his pleading. *See* Appellant's Br. at 9-12.

More broadly, Davis' request was at odds with the purpose of Federal Rule of Civil Procedure 12(d), which governs the conversion of Rule 12(b)(6) motions to summary judgment motions under Rule 56, because it was based on Davis' voluntary decision to submit discovery materials in opposition to Defendants-Appellants' dismissal motion. Rule 12(d) is intended to ensure that "when a trial judge considers evidence dehors the complaint, a plaintiff will have an opportunity to contest *defendant's* relied-upon evidence by submitting material that controverts it." *Global Network Communs., Inc. v. City of New York*, 458 F.3d 150, 155 (2d Cir. 2006) (emphasis added).[1] If Davis believed that discovery material afforded him a basis to make new allegations, he was free to seek leave to amend his pleading under the liberal Rule 15(a)(2) standard. However, Davis has cited no authority for the

---

[1] The conversion requirement in Rule 12 was renumbered Rule 12(d) as part of the general restyling of the Federal Rules of Civil Procedure in the 2007 amendments thereof.

proposition that the non-moving party's voluntary submission of discovery material is a basis to convert a Rule 12(b)(6) motion and hold it in abeyance pending further discovery. *See* Appellant's Br. at 9-12.[2]

### POINT II
### THE DISTRICT COURT CORRECTLY DISMISSED DAVIS' PROCEDURAL DUE PROCESS CLAIM BECAUSE DAVIS RECEIVED HIS CONSTITUTIONAL PROTECTIONS

As the district court recognized, as a public employee with a protected property interest in his employment, the Fourteenth Amendment guaranteed Davis only "oral or written notice of the charges against [him], an explanation of the employer's evidence, and an opportunity to present [his] side of the story" prior to his termination. *Loudermill*, 470 U.S. at 546; A122-23. Davis concededly received these procedural guarantees, and therefore the district court appropriately rejected his Section 1983 due process claim concerning his pre-termination procedural protections. A015 ¶ 21 (Davis received "a notice of disciplinary hearing from Metro North outlining his charged offenses"); A012 ¶ 3 (Davis' termination followed "a formal investigation and hearing"); A016 ¶¶ 22-23 (Davis and at least one Metro-North witness testified at his hearing); A123-25.

On appeal, Davis argues that the denial of his request to cross-examine the crew members of the train with which his train collided on July 12, 2018 during his

---

[2] Davis never requested leave to amend his Second Amended Complaint.

pre-termination hearing constituted a due process violation. Appellant's Br. at 17-18. In support of this argument, Davis cites only decisions addressing the rights of applicants for Social Security benefits to challenge adverse medical reports. *Id.* at 18 (citing *Townley v. Heckler*, 748 F.2d 109 (2d Cir. 1984); *Gullo v. Califano*, 609 F.2d 649 (2d Cir. 1979)). But Davis does not explain how the other train crew members' written statements were "used against" him in the same way as a medical report relied upon to deny claimed benefits. More fundamentally, Davis cites no authority for the proposition that public employees have a constitutional right to cross-examine witnesses at pre-termination hearings; indeed, such a holding would directly contravene the Supreme Court's decision in *Loudermill*. 470 U.S. at 546 (requiring a full evidentiary hearing prior to termination "would intrude to an unwarranted extent on the government's interest in quickly removing an unsatisfactory employee").

Davis also contends that the district court erred by finding that his allegation that the outcome of his pre-termination hearing was decided in advance did not state a Section 1983 procedural due process claim. Appellant's Br. at 13-17. In dismissing Davis' procedural due process claim, the district court cited two decisions by this Court holding that neutral decisionmakers are not required for pre-termination hearings. A125 (citing *Green v. Dep't of Educ. of City of New York*, 16 F.4th 1070, 1077 (2d Cir. 2021); *Faghri v. Univ. of Conn.*, 621 F.3d 92, 99 (2d Cir.

2010)).  These decisions, in turn, relied on *Locurto v. Safir*, 264 F.3d 154, 174 (2d Cir. 2001), in which this Court answered the question of whether "a neutral adjudicator is a necessary component of due process at a pre-termination hearing" in the negative.

Curiously, on appeal Davis contends that *Locurto* does not apply to an allegation, like his, concerning "*the outcome of the hearing being determined before it is even held*."  Appellant's Br. at 16.  However, that was precisely the allegation of the plaintiffs in *Locurto*; they claimed that the ultimate decisionmakers for their pre-termination proceedings were "predetermined to fire plaintiffs from the outset." *Locurto*, 264 F.3d at 171.  Nevertheless, this Court – relying on the principles of *Loudermill* – held that a neutral adjudicator is not a necessary component of due process at a pre-termination hearing for a public employee.  *Id.* at 174.

On appeal, Davis suggests that *Locurto* is no longer good law, Appellant's Br. at 15-16, but this assertion overlooks this Court's recent *Green* decision relying upon *Locurto*, which was cited by the district court.  A125.  Furthermore, Davis' authority for the proposition that the Second Circuit has "questioned the viability of *Locurto*," is a decision involving taxicab drivers' due process challenges to post-deprivation hearings conducted by Administrative Law Judges, not claims by public employees concerning pre-deprivation hearings.  *Rothenberg v. Daus*, 481 F. App'x 667 (2d Cir. 2012) (am. summary order).  The *Rothenberg* decision simply indicated that on

15

remand the district court should "explain or re-evaluate" its application of *Locurto*, potentially after "further record development as to the interests at stake" in the non-employment setting at issue. *Rothenberg*, 481 F. App'x at 677. Davis' reliance on *DiBlasio v. Novell*, 344 F.3d 292, 302 (2d Cir. 2003) likewise is inapposite, because that decision addressed whether post-termination procedures *alone* provided sufficient due process – here, Davis acknowledges that he received "a formal investigation and hearing" prior to his termination. A012 ¶ 3. Davis' citation to *Victory v. Pataki*, 814 F.3d 47, 63 (2d Cir. 2016), Appellant's Br. at 17, similarly is misplaced, because that case involved a due process claim by a former inmate whose parole had been rescinded, not a public employee. In the public employment context, this Court has squarely held in *Locurto* and subsequent decisions that a neutral decisionmaker is not required in pre-termination proceedings.

Finally, Davis argues, without citation to any authority, that *Locurto* does not apply because he did not have recourse to a post-termination Article 78 proceeding. Appellant's Br. at 16-17. However, Davis concededly pursued an appeal to a neutral arbitrator pursuant to the CBA. A012 ¶ 4, A013 ¶ 7. Arbitration proceedings established by collective bargaining agreements satisfy the post-deprivation procedural due process rights of public employees. *DiCesare v. Town of Stonington*, 823 F. App'x 19, 23-24 (2d Cir. 2020) (summary order) (citing *Harhay v. Town of Ellington Bd. of Educ.*, 323 F.3d 206, 213 (2d Cir. 2003)). Indeed, the opportunity

to initiate arbitration proceedings before a Special Board of Adjustment has been held to satisfy the constitutional due process standard for post-termination proceedings in other cases involving terminated Metro-North employees. *See, e.g.*, *Williams v. Metro-North R.R.*, No. 17 Civ. 3092, 2020 U.S. Dist. LEXIS 53914, at *29-30 (S.D.N.Y. Mar. 27, 2020) (dismissing due process claim by terminated Metro-North employee who had pre-deprivation notice and opportunity to appeal to arbitrator); *Giraud v. MTA Metro-North R.R. Co.*, No. 09 Civ. 2187, 2010 U.S. Dist. LEXIS 23197, at *17 (S.D.N.Y. Mar. 12, 2010) (terminated Metro-North employee's due process rights were protected by right to seek arbitration).

Davis' conclusory allegation that the neutral arbitrator who upheld his termination "was over 90 years old, mentally infirm, and incapable of performing the duties of his position," A017 ¶ 26, properly was rejected by the district court. A125. Davis, his union, and Metro-North agreed to present Davis' appeal to this arbitrator, *see* A017 ¶ 26, and other than his disagreement with the outcome of the arbitrator's decision, Davis alleges no facts in support of his attack on the arbitrator, which is contradicted by the arbitrator's cogent written decisions, *see* A075-76, A079-80.

In short, the procedural protections that Davis acknowledges he was afforded – written notice of his disciplinary charges, a pre-termination "formal investigation and hearing" at which Davis testified, and a post-termination appeal to a neutral

arbitrator pursuant to the CBA, A012 ¶ 3, A015 ¶ 21, A016 ¶¶ 22-23 – more than

satisfied the constitutional due process requirements, and therefore the district court

properly dismissed Davis' Section 1983 due process claim.  Because Davis already

had been given multiple attempts to plead his claim, and was represented by counsel

when he filed his operative pleading, the dismissal was appropriately with prejudice.

*See*, *e.g.*, *Smart v. Gifford*, No. 15 Civ. 8939, 2018 U.S. Dist. LEXIS 5998, at \*42

(S.D.N.Y. Jan. 12, 2018) (citing, *inter alia*, *Denny v. Barber*, 576 F.2d 465, 471 (2d

Cir. 1978)).  A126.

At a minimum, there is no allegation that Defendant-Appellee Longobardi

committed or personally participated in any deprivation of any Davis' due process

rights, and thus the dismissal with prejudice of Davis' Section 1983 procedural due

process claim against Longobardi in his personal capacity should be affirmed.  *See*

*Dubois v. Beaury*, 21-2096-cv, 2022 U.S. App. LEXIS 14647, at \*9-10 (2d Cir. May

27, 2022) (summary order).

## POINT III
### BECAUSE DAVIS FAILED TO ALLEGE APPROPRIATE COMPARATORS OR MALICE,  THE DISMISSAL WITH PREJUDICE OF HIS SELECTIVE ENFORCEMENT CLAIM SHOULD BE AFFIRMED

As the district court recognized, to raise a Fourteenth Amendment selective

enforcement challenge through a Section 1983 claim, Davis was required to allege

"that (1) he was treated differently from other similarly situated employees and (2)

such treatment was motivated by the malicious or bad-faith intent" to injure him.

A121 (citing *Cine Sk8, Inc. v. Town of Henrietta*, 507 F.3d 778, 790 (2d Cir. 2007)).

The district court properly determined that Davis failed to allege that he was treated differently than similarly situated employees, and thus the dismissal of Davis' Section 1983 selective enforcement claim with prejudice should be affirmed. Moreover, dismissal of Davis' selective enforcement claim also was warranted due to the absence of plausible allegations that malice towards him caused his termination.

### A.    Davis Failed to Allege That Similarly Situated Employees Received Cognizably Favorable Treatment

The district court appropriately required Davis to allege that he was treated less well than employees with "'a reasonably close resemblance of the facts and circumstances of [their] cases,'" A121 (quoting *Graham v. Long Island R.R.*, 230 F.3d 34, 40 (2d Cir. 2000)), based on an objective standard, *id.* (citing *Mosdos Chofetz Chaim, Inc. v. Vill. of Wesley Hills*, 815 F. Supp. 2d 679, 696 (S.D.N.Y. 2011)).  Because Davis failed to do so, his selective enforcement claim was properly dismissed.

Davis' first purported comparator is the Engineer who was operating the train for which Davis served as the Conductor during the collision on July 12, 2018. Appellant's Br. at 20-21.  In his pleading, Davis alleges that the Engineer accepted a pre-trial "settlement involving suspension from duty," A020 ¶ 41, whereas Davis

"was never actually offered a settlement or waiver in connection with the July 12, 2018 incident," A021 ¶ 44.

In reality, Davis also was offered the opportunity to return to work pursuant to a settlement agreement involving a suspension, but he declined that offer. Elsewhere in his pleading, Davis alleges that after his disciplinary hearing was conducted his "union representative informed him that they had heard Defendants were going to fire [him] unless he admitted guilt and forfeited any right to appeal." A021 ¶ 46. This paragraph is a misleading paraphrase of a September 26, 2018 text message that Davis received from his union representative, in which Davis was informed that Metro-North would return him to service the next day if he signed a a an agreement with certain conditions including accepting a suspension, admitting guilt, and waiving appeals. A063. The union representative asked Davis to "let me know what you want to do" and indicated that the union would "support any decision you make." *Id.* Thus, Davis' allegation that he was treated less favorably than the Engineer because he did not receive a settlement offer is contradicted by the communication from his union representative, which plainly reflects a settlement offer from Metro-North and requests a response from Davis. As Davis admitted during an earlier round of briefing, he "declined to sign an admission of guilt, as he was entitled to, because he maintained that he was not responsible for the train collision." ECF No. 31-6.

The district court properly considered the communication between Davis and his union representative because it was referenced in Davis' pleading. *Dubois*, 2022 U.S. App. LEXIS 14647, at *6 n.1 (district court properly considered emails whose contents were described in pleading on Rule 12(b)(6) motion). On appeal, Davis argues that the district court should not have considered the text message because it contradicts Davis' allegations about the absence of a settlement offer. Appellant's Br. at 10-12. But Davis' argument gets the law backwards – where the allegations in his pleading are contradicted by a document properly considered on the dismissal motion, it is *his allegations* which need not be credited. *Sveaas v. Christie's Inc.*, 452 F. App'x 63, 66 (2d Cir. 2011) (courts "need not feel constrained to accept as truth pleadings that are contradicted . . . by documents upon which its pleadings rely") (internal quotation marks and citation omitted) (summary order). Thus, the district court appropriately concluded that Davis had not sufficiently alleged the Engineer was a similarly situated employee who received differential treatment. A116.[3]

On appeal, Davis is left to object that the Engineer received a settlement offer *before* participating in a formal hearing, whereas Davis received his settlement offer

---

[3] The district court reached this conclusion with respect to Davis' Title VII claim and applied it to his Section 1983 selective enforcement claim because the same standards for comparator analysis apply to both claims. *See* A122; *Hu v. City of New York*, 927 F.3d 81, 96 (2d Cir. 2019).

*after* his formal hearing.  Appellant's Br. at 21.  Davis cites no authority for the proposition that the timing of an offer to resolve an employee's disciplinary charges relative to a disciplinary hearing constitutes a cognizable injury under the Fourteenth Amendment.  *See Brown v. City of Syracuse*, 673 F.3d 141, 152-53 (2d Cir. 2012) (holding that even if plaintiff's allegations that he did not receive the same "professional courtesy" that other police officers purportedly receive in internal disciplinary proceedings and in prosecutions and dispositions of criminal charges were true, "they do not constitute a cognizable equal protection claim" because plaintiff suffered no "constitutional harm"); *Davidson v. Tesla*, No. 06 Civ. 861, 2008 U.S. Dist. LEXIS 10529, at *9-10 (D. Conn. Feb. 13, 2008) (rescinded verbal warning by police officer and inconvenient travel to police station not cognizable constitutional injuries for purposes of equal protection claim).  Indeed, Davis' admission that he refused to enter into a settlement agreement based on his belief in his complete innocence, ECF No. 31-6, belies his attempt to assign significance to the precise timing of the settlement offer.  Because the Engineer was willing to accept a settlement agreement, but Davis was not, the Engineer is not a proper comparator to Davis.  *Testagrose v. N.Y. City Hous. Auth.*, No. 06 Civ. 0614, 2009 U.S. Dist. LEXIS 30326, at *19-20 (E.D.N.Y. Mar. 31, 2009) (employee disciplined pursuant to voluntary guilty plea not proper comparator to plaintiff who did not make such guilty plea), *aff'd*, 369 F. App'x 231 (2d Cir. 2010) (summary order).

Likewise, the divergent disciplinary histories of Davis and the Engineer further prevents proper comparison. Although on appeal Davis highlights that the Engineer had been disciplined prior to the July 12, 2018 incident, Appellant's Br. at 21, there is no allegation that the Engineer had received last-chance discipline within two years of the collision, as Davis concededly had, A011-12 ¶ 2. *See Zheng-Smith v. Nassau Health Care Corp.*, 20-3544-cv, 2021 U.S. App. LEXIS 27084, at *3-4 (2d Cir. Sept. 9, 2021) (rejecting purported comparator due to plaintiff's "more extensive disciplinary history") (summary order).

Davis' next group of purported comparators are two Conductors and an Engineer who were working on a train involved in a collision with a passenger train in December 2014. A022-23 ¶¶ 48-52. The district correctly determined that the Engineer in that incident is not a proper comparator because she agreed to a settlement, A022 ¶ 48, but, as discussed above, Davis was offered but refused the opportunity to do so. A116.

The district court also appropriately found that Davis failed to allege sufficient facts to establish that the Conductors involved in the December 2014 incident were proper comparators, including because he did not claim that they had engaged in similar misconduct to that with which he was charged, such as participating in an unauthorized reverse move, or had comparable disciplinary histories. A116 n.8. On appeal, Davis contends that the district court set the pleading bar too high.

Appellant's Br. at 23-24.  However, Davis' own authority recognizes that "[a]t the motion to dismiss stage . . . a court still must determine whether, based on a plaintiff's allegations in the complaint, it is plausible that a jury could ultimately determine that the comparators are similarly situated." *Mosdos Chofetz Chaim, Inc.*, 815 F. Supp. 2d at 698.  Consequently, "well-pled facts showing that the plaintiff has been treated differently from others similarly situated remains an essential component of such a claim." *Id.*  Indeed, this Court has held that the mere allegation that another employee "was not fired for using abusive language" was insufficient to allege disparate treatment absent "any information about whether" that employee "was similarly situated." *Shaw v. McDonald*, 715 F. App'x 60, 61-62 (2d Cir. 2018) (summary order); *see also Cooper v. Franklin Templeton Invs.*, 22-2763-cv, 2023 U.S. App. LEXIS 14244, at *8 (2d Cir. June 8, 2023) (summary order) (Court "cannot plausibly infer from the Plaintiff's allegations that Plaintiff's alleged comparators" were similarly situated to the plaintiff in all material respects).  Similarly, Davis' assertion that mere involvement in a collision renders an employee comparable to him is inadequate, particularly absent any allegations about the purported comparators' conduct in connection with the December 2014 collision.

Davis' third and final group of purported comparators are seven employees who allegedly engaged in misconduct while "on last chance waivers for other disciplinary charges that remained employed by Metro North."  A023-25 ¶¶ 53-59.

But, as discussed above, Davis also was offered the opportunity to accept a settlement and remain employed following the July 12, 2018 collision, but he rejected it, and therefore he has not alleged that Metro-North treated these employees more favorably than him; the distinguishing factor is that the purported comparators were willing to accept settlements, whereas Davis was not. A063; ECF No. 31-6. Moreover, as the district court recognized, Davis' allegations regarding several of these employees are conclusory, and fail to identify, *inter alia*, the employees' positions, A024 ¶¶ 55-58, which prevents their consideration as comparators. A116-17. *See Cooper*, 2023 U.S. App. LEXIS 14244, at *8 (comparators must be alleged to be "subject to the same performance evaluation and discipline standards" as plaintiff to state claim for differential treatment) (internal quotation marks omitted). Thus, the district court properly dismissed Davis' Section 1983 selective enforcement claim based on a failure to identify similarly situated employees who were treated more favorably than him.

## B. Davis Failed to Allege That Malice Towards Him Caused His Termination

Even if Davis had adequately alleged that similarly situated employees received favorable treatment, he would have been required to plausibly allege that such differential treatment was caused by malice or bad faith intent to injure him, as opposed to a legitimate governmental objective. *Bizzarro v. Miranda*, 394 F.3d 82,

87 (2d Cir. 2005). Davis' failure to satisfy this burden is an additional reason that the dismissal of his Section 1983 selective enforcement claim should be affirmed.

On appeal, Davis contends that a purported delay in conducting his disciplinary hearing reflects malice towards him. Appellant's Br. at 22. But the CBA contemplates the adjournment of disciplinary hearings to accommodate, *inter alia*, the schedules of participants, A053-54, which was necessary here, A061. Davis fails to allege any facts suggesting that the commencement of his disciplinary hearing on September 5, 2018 concerning a July 12, 2018 incident reflected malice towards him, as opposed to the legitimate governmental objective of ensuring adequate preparation and attendance at the proceeding.

Davis also relies on his allegation that offense was purportedly taken to his social media post containing a photograph of him on a boat prior to his disciplinary hearing. Appellant's Br. at 22. However, despite supposed malice created by Davis' photograph, Davis was offered the opportunity to return to work after his social media posting. *Compare* A019 ¶ 36 (photograph posted before September 5, 2018) *with* A063 (September 26, 2018 text message to Davis conveying settlement offer). Thus, any alleged ill-will from Davis' posting did not cause his termination.

Finally, Davis points to supposed statements made prior to his disciplinary hearing which he claims indicated that he would be terminated. Appellant's Br. at 22. But Davis fails to allege that these statements were premised on spite or malice,

as opposed to the nature of Davis' conduct in connection with the July 12, 2018 collision and his receipt of last-chance discipline within the two years prior to the incident. Moreover, Davis' reference to statements on July 12, A018 ¶ 31, and August 21, A091, cannot demonstrate malice that caused his termination, because subsequently he was offered a settlement to return to work in September 2018. A063.

In sum, Davis failed to allege both elements of his Section 1983 selective enforcement claim – favorable treatment of similarly situated employees and that such treatment was motivated by malice towards him. In light of Davis' repeated opportunities to adequately plead his claim, the district court properly dismissed it with prejudice.

Additionally, Davis' failure to allege Defendant-Appellee Longobardi's malice towards him – and in fact, Davis' allegation to the contrary, A017 ¶ 25 – further supports affirmance of the dismissal with prejudice of Davis' Section 1983 selective enforcement claim against Longobardi.

## POINT IV
### THE DISTRICT COURT CORRECTLY DISMISSED DAVIS' TITLE VII CLAIM FOR FAILING TO RAISE AN INFERENCE OF RACIAL DISCRIMINATION

Finally, Davis failed to raise the required inference of racial discrimination to adequately state a *prima facie* Title VII claim against Metro-North, and therefore the district court properly dismissed this claim. A113-19.

On appeal, Davis has abandoned his argument that comparator analysis raises an inference of racial discrimination against him by not discussing the treatment of any purported comparators in connection with his Title VII claim. *See* Appellant's Br. at 26-32. *State St. Bank & Trust Co. v. Inversiones Errazuriz Limitada*, 374 F.3d 158, 172 (2d Cir. 2004) ("When a party fails adequately to present arguments in an appellant's brief, [the Court] consider[s] those arguments abandoned.").[4] Thus, Davis is left to rely on alleged procedural irregularities in his disciplinary process and purportedly disproportionate discipline to raise an inference of race discrimination. Neither argument raises the inference of racial discrimination against Davis necessary to state a *prima facie* Title VII claim.

## A. Alleged Procedural Irregularities in Davis' Disciplinary Process Do Not Raise an Inference of Racial Discrimination

With respect to the supposed procedural irregularities in Davis' disciplinary process, the district court properly held that such purported procedural deviations could be relevant to the third step of the *McDonnell Douglas* framework, which evaluates whether Metro-North's non-discriminatory explanation of its actions is pretextual, but do not support Davis' *prima facie* case, which requires him to raise

---

[4] Even if Davis had attempted to rely on comparator analysis to support his Title VII claim on appeal, it would have been unavailing in light of the flaws discussed above with respect to his Section 1983 selective enforcement comparator analysis, and his additional failure to allege the races of the other employees involved in the July 12, 2018 incident. *See* A116 n.7.

an inference of racial discrimination. A117-19. Indeed, "Courts in this District have held that although an employer's failure to follow internal procedures alone is insufficient to create an inference of discrimination to support a plaintiff's *prima facie* case, such failure may evidence pretext at the third step of the *McDonnell Douglas* framework." *Anderson v. New York City Health & Hosps. Corp.*, No. 16 Civ. 1051, 2020 U.S. Dist. LEXIS 36772, at *44-45 (S.D.N.Y. Mar. 2, 2020) (citing cases), *report and recommendation adopted*, 2020 U.S. Dist. LEXIS 56234 (S.D.N.Y. Mar. 31, 2020). Unlike supposedly preferential treatment of employees outside of the plaintiff's protected class or other accepted bases for circumstantially raising an inference of race discrimination, an allegedly isolated departure from standard procedures does not raise an inference of discrimination based on the plaintiff's race, as plaintiff's *prima facie* case requires.

On appeal, Davis presents cherry-picked quotations that imprecisely describe the relevance of alleged procedural irregularities to Title VII claims. Appellant's Br. at 28-29. But the substance of those decisions reflects consideration of alleged procedural irregularities only after a *prima facie* claim has been alleged or established. *Johnson v. Conn.*, 798 F. Supp. 2d 379, 389 (D. Conn. 2011) (considering deviation from hiring guidelines during pretext analysis after *prima facie* case established); *Richards v. Calvet*, No. 99 Civ. 12172, 2005 U.S. Dist. LEXIS 5365, at *22 (S.D.N.Y. Mar. 31, 2005) (citing deviations from typical

performance review process in analysis of third step of *McDonnell Douglas* framework); *Eldaghar v. City of N.Y. Dep't of Citywide Admin. Servs.*, No. 02 Civ. 9151, 2008 U.S. Dist. LEXIS 58040, at *24-25 (S.D.N.Y. July 31, 2008) (considering procedural deviations on third *McDonnell Douglas* step).[5]

Indeed, as Davis' own authority recognizes, even when considering alleged procedural irregularities on the question of pretext, "the Second Circuit has been clear that . . . a plaintiff must show more than mere deviation [from procedural regularity]"; namely, "that the procedural irregularity was race-related or otherwise motivated by discrimination." *Almodovar v. Cross Fin. Corp.*, No. 20 Civ. 1179, 2022 U.S. Dist. LEXIS 98413, at *21-22 (D. Conn. June 2, 2022) (internal quotation marks and alterations omitted) (citing *Bickerstaff v. Vassar Coll.*, 196 F.3d 435, 453 (2d Cir. 1999)) (cited on Appellant's Br. at 27). This rule has been "consistently applied" by district courts. *Id.* (citing cases). Davis' claims regarding purported

---

[5] The cases Davis cites in support of his allegation that deviations from procedural regularity create an inference of discrimination, Appellant's Br. at 27, likewise reflect consideration of alleged procedural deviations on the question of pretext. *Stern v. Trustees of Columbia Univ.*, 131 F.3d 305, 312-13 (2d Cir. 1997) (considering deviation from usual procedures after plaintiff made out *prima facie* case of discrimination); *Sklaver v. Casso-Solar Corp.*, No. 02 Civ. 9928, 2004 U.S. Dist. LEXIS 24934, at *32 (S.D.N.Y. May 14, 2004) (noting that violation of internal procedures does not create an inference of discrimination, but considering departure from policy in pretext analysis); *Norris v. Metro-North Commuter R.R. Co.*, 522 F. Supp. 2d 402, 408-09 (D. Conn. 2007) (considering alleged procedural irregularity only after plaintiff made out *prima facie* Title VII claim).

procedural irregularities do not connect those alleged discrepancies to employees' races, and thus fail to raise an inference of racial discrimination.[6]

Furthermore, even if supposed procedural irregularities were relevant to whether Davis had properly pled a *prima facie* race discrimination claim, Davis has failed to allege that his disciplinary process deviated from regular practice. First, Davis complains about a purported determination to fire him before his disciplinary hearing. Appellant's Br. at 29. But as Davis also notes, Metro-North initially suspected that all three employees involved in the July 12, 2018 incident had committed terminable offenses. A084. However, upon further consideration, Metro-North offered all three of the employees the opportunity to enter into settlement agreements to return to work. A021 ¶ 43; A063. Davis has thus failed to allege any procedural irregularity with respect to this aspect of his discipline.

---

[6] Davis cites one report and recommendation, *Donnelly v. Greenburgh Central School District No. 7*, No. 08 Civ. 11031, 2011 U.S. Dist. LEXIS 172790, at *20 (S.D.N.Y. Mar. 31, 2011), which relies on *Zahorik v. Cornell University*, 729 F.2d 85 (2d Cir. 1984) to consider alleged procedural deviations in evaluating whether the plaintiff established a *prima facie* case of discrimination on summary judgment. However, in *Donnelly*, the court found that the plaintiff had not established a *prima facie* discrimination claim. 2011 U.S. Dist. LEXIS 172790, at *29. In *Zahorik*, the Court likewise affirmed the dismissal of plaintiffs' sex discrimination claims on summary judgment because, despite purported procedural irregularities in tenure decisions, the record did not raise a disputed issue of material fact as to differential treatment because of sex as to any of the plaintiffs. *Zahorik*, 729 F.2d at 94. Thus, neither decision establishes that a plaintiff can raise an inference of discrimination to support a *prima facie* discrimination claim based on alleged procedural irregularities alone.

Davis also claims that Metro-North failed to comply with the requirements in the CBA to hold a pre-hearing meeting and timely commence his disciplinary hearing. Appellant's Br. at 29. However, Metro-North met with Davis' union concerning his charges prior to his disciplinary hearing, which is all that is required by the CBA. A020 ¶ 39, A053, A060. With respect to the timing of Davis' hearing, the CBA contemplates hearing adjournments to accommodate, *inter alia*, the schedules of participants, A053-54, which was necessary here, A061. Davis fails to make any allegations about the actual practice of scheduling disciplinary hearings in other cases. Thus, Davis has not properly alleged procedural irregularities in his disciplinary process, much less departures that raise an inference of racial discrimination.[7]

## B. Davis' Purportedly Disproportionate Punishment Does Not Raise an Inference of Racial Discrimination

Davis also unsuccessfully attempts to raise an inference of racial discrimination by contending that his termination was a disproportionate reaction to his violation of "hyper technical" requirements. Appellant's Br. at 29-32. He cites no authority indicating that he can satisfy his *prima facie* burden of raising an

---

[7] To the extent that Davis attempts to draw a comparison between the details of his disciplinary process and the processes of the other two employees involved in the July 12, 2018 incident, he has failed to allege the races of those employees, and therefore cannot rely on such allegations to raise an inference of racial discrimination. *See* A116 n.7.

inference of racial discrimination on this basis. The two decisions on which he relies considered allegedly disproportionate discipline in starkly different contexts. *Smith v. North Shore-Long Island Jewish Health Sys.*, 286 F. Supp. 3d 501, 519 (E.D.N.Y. 2018) (evaluating whether alleged "overreaction" of employer supports causal connection element of retaliation claim); *Stalter v. Walmart Stores*, 195 F.3d 285, 290 (7th Cir. 1999) (considering alleged disproportionality of punishment at third step of *McDonnell Douglas* analysis on summary judgment).

Furthermore, Davis' argument depends on a tortured misreading of the basis for his discipline. He attempts to argue that he was terminated solely for not carrying his conductor compliance card during the July 12, 2018 incident. But, as Davis has acknowledged, he was charged with failing to take appropriate action to ensure the train on which he was the crew member in charge operated at restricted speed, failing to report his train's collision, and performing an unauthorized reverse move of equipment, in addition to failing to carry his compliance card. A015 ¶ 21. After Davis rejected Metro-North's offer to resolve his charges, A063, ECF No. 31-6, he was found guilty of all of his charges and, taking into account his receipt of last-chance discipline within the past two years, A011 ¶ 2, A012 ¶ 3, he was terminated. *See* A079 (reflecting Metro-North's position that Davis was guilty of all violations charged). The neutral arbitrator to whom Davis appealed pursuant to the CBA noted that "[e]ven if" he accepted Davis' argument that he bore no responsibility for the

33

collision, termination was appropriate because "Claimant's actions thereafter did not follow the required procedures." A080. However, the arbitrator's decision does not change the fact that Metro-North's termination decision was based on a determination that Davis was guilty of all of his disciplinary charges, in conjunction with his disciplinary history.

Furthermore, Davis' contention that Metro-North owed him leniency because he was a "longstanding employee" overlooks the fact that Metro-North offered Davis a settlement to avoid termination, but Davis rejected Metro-North's offer. A063, ECF No. 31-6. In any event, this argument does not raise the necessary inference of racial discrimination to state a Title VII claim against Metro-North. Given the futility of offering Davis another opportunity to plead his Title VII claim against Metro-North, the district court correctly dismissed this claim with prejudice.

## CONCLUSION

For the foregoing reasons, Defendants-Appellees respectfully request that this Court affirm the judgment dismissing Davis' claims against them with prejudice and grant the Metro-North Appellees such other and further relief as the Court deems just and proper.

Dated:   November 3, 2023
          New York, New York

Respectfully submitted,

SUSAN SARCH
VICE PRESIDENT & GENERAL COUNSEL
METRO-NORTH COMMUTER RAILROAD
420 Lexington Ave., 11th Floor
New York, New York 10170

By:   s/Jennifer A. Mustes
      Jennifer A. Mustes
      420 Lexington Ave., 11th Floor
      New York, New York 10170
      (212) 340-2504
      jmustes@mnr.org

*Counsel for defendants-appellants*

## <u>CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMIT</u>

This document complies with the word limit of Fed. R. App. P. 32(a)(7)(B)(i) because, excluding the parts of the document exempted by Fed. R. App. P. 32(f), this document contains 7,951 words, as tabulated by the word count function of Microsoft Word for Microsoft 365.

This document complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because this document has been prepared in a proportionally spaced typeface using Microsoft Word for Microsoft 365 in Times New Roman, fourteen-point font.

Dated:   November 3, 2023
            New York, New York

Respectfully submitted,

SUSAN SARCH
VICE PRESIDENT & GENERAL COUNSEL
METRO-NORTH COMMUTER RAILROAD
420 Lexington Ave., 11th Floor
New York, New York 10170

By:   s/Jennifer A. Mustes
        Jennifer A. Mustes
        420 Lexington Ave., 11th Floor
        New York, New York 10170
        (212) 340-2504
        jmustes@mnr.org

*Counsel for defendants-appellants*

36